# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DONELLA SOUTHERLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil No. 14-3094** |
| **RAMON ESCAPA, In His** | ) | |
| **Individual Capacity and Official** | ) | |
| **Capacity as Schuyler County** | ) | |
| **State's Attorney,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Ramon Escapa's Motion to Dismiss (d/e 9).  The Plaintiff is proceeding pro se.  The Defendant's motion is GRANTED in part and DENIED in part.  The Plaintiff's allegations regarding her constitutional challenge to 720 ILCS 5/24-1.6 are sufficient to survive the Defendant's motion to dismiss, but the Plaintiff's unreasonable search and seizure claim must be dismissed because the search was supported by probable cause and, regardless, the Defendant is entitled to qualified

immunity.

# I. **BACKGROUND**

In the early morning hours of March 17, 2014, Deputy Spencer Bedwell of the Schuyler County Sheriff's Department was on patrol in a marked squad car near the home of the Plaintiff, Donella Southerland, and her husband, Jurl Southerland. See Complaint for Search Warrant, d/e 1-2 at 2. Deputy Bedwell noticed a suspicious vehicle parked in an entrance to the Southerland's property as he passed the Southerland residence, so he turned around to investigate. Id. After Deputy Bedwell had passed the residence again, he noticed Jurl Southerland emerge from the Southerlands' house and run into the road in front of the house. Id. Deputy Bedwell backed up to see if Mr. Southerland needed help. Id. Deputy Bedwell announced that he was with the Sheriff's Department and asked Mr. Southerland if everything was okay, and Mr. Southerland responded by pointing a "long gun" at the squad car and yelling "I don't want you fucking cops around here." Id. When Deputy Bedwell drew his weapon in response to this threat, Mr. Southerland did not lower his gun, but he did move

it so that it was not pointed directly at Deputy Bedwell anymore. Id. at 3. Mr. Southerland then continued to scream about "how he would shoot the next car that stopped near his house because he had something stolen in the past." Id. Deputy Bedwell told Mr. Southerland to drop the gun and tried to ask him about the suspicious vehicle, but Mr. Southerland continued to tell Deputy Bedwell to "Get the fuck out of here" and "I don't need you fucking cops." Id. At that point, fearing a violent confrontation, Deputy Bedwell left the scene and reported the incident to the Sheriff. Id.

Later that morning, Deputy Bedwell signed off on a complaint for a search warrant to search the Southerland residence and seize:

> Any and all weapons or firearms, including but not
> limited to, handguns, rifles, shotguns, spring-guns,
> sawed-off shotguns, or sawed-off rifles, ammunition,
> which may have been used in commission of the offense
> or Aggravated Assault, Aggravated Unlawful Use of a
> Weapon, and Reckless Conduct, and any other items
> which may have been used in the commission of the
> offenses.

See Complaint for Search Warrant, d/e 1-2 at 1. A Schuyler County circuit judge approved the search warrant at 11:55 AM on March 17, 2014. See Search Warrant, d/e 1-1.

The search was conducted on March 18, 2014.  When officers attempted to take all of the Southerlands' firearms and ammunition, the Plaintiff protested that because Deputy Bedwell's complaint referred to a "long gun," the officers should not seize any shotguns or handguns.  Complaint, d/e 1 ¶ 22.  The officers then called the Defendant, Schuyler County State's Attorney Ramon Escapa and relayed the Plaintiff's objection to the seizure of handguns and shotguns to him.  Id. ¶ 23.  The Defendant instructed the officers to disregard the Plaintiff's objection and to seize all of the Southerlands' firearms, including rifles, shotguns, and handguns.  Id.  The Plaintiff claims that because the Defendant knew that Mr. Southerland pointed a "long gun" at Deputy Bedwell, the Defendant acted unreasonably by authorizing the seizure of all of the Southerlands' firearms.  Id. ¶ 24.

In addition to challenging the search of her home and the seizure of her firearms, the Plaintiff challenges the constitutionality of 720 ILCS 5/24-1.6, the Illinois statute criminalizing the aggravated unlawful use of a weapon ("AUUW").  The AUUW statute generally criminalizes the open carrying of all firearms.  The statute

does allow a person to carry a concealed "pistol, revolver, or handgun" if the person possesses a valid license under the Firearm Concealed Carry Act. However, that statute does not provide for the public carrying of rifles or shotguns, concealed or otherwise. <u>See</u> 720 ILCS 5/24-1.6(a)(3)(A-5). The Plaintiff claims that she needs to be able to openly carry a loaded rifle or shotgun to defend herself and her property. Compl., d/e 1 ¶¶ 12-16. She argues that by prohibiting her from doing so, the AUUW statute violates her Second Amendment rights. Id. ¶¶ 41-44.

The Defendant moved to dismiss both of the Plaintiff's claims on May 27, 2014. <u>See</u> Motion to Dismiss, d/e 9. After being granted additional time to file a response, the Plaintiff filed her response on July 21, 2014. <u>See</u> Plaintiff's Response to Motion to Dismiss, d/e 12.

## II. <u>LEGAL STANDARD</u>

Dismissal under Rule 12(b)(6) is proper if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

570 (2007)).  In determining whether a complaint can survive a motion to dismiss, the Court can consider "the allegations that are contained in [the complaint] and all reasonable inferences drawn from [the complaint] in favor of the nonmovant."  <u>Dausch v. Rykse</u>, 52 F.3d 1425, 1428 (7th Cir. 1994).

## III.  <u>ANALYSIS</u>

The Defendant argues that the Plaintiff's claim against the constitutionality of the AUUW statute should be dismissed because (1) he is not the proper party to defend the constitutionality of the statute, (2) the Plaintiff lacks standing to bring the challenge, and (3) the challenge is moot.  The Defendant also moves to dismiss the Plaintiff's unreasonable search and seizure claim on the grounds that there was probable cause for the search and the search warrant was sufficiently particular.  Lastly, the Defendant claims that even if there were not probable cause for the search, he is entitled to a finding of qualified immunity against the Plaintiff's unreasonable search and seizure claim.

### A.  **The Plaintiff's constitutional challenge survives the Defendant's motion to dismiss.**

The Defendant argues that, as a state's attorney, he is not the proper party to defend the constitutionality of a state statute. He also claims that the Plaintiff lacks standing to challenge the statute because she has not been prosecuted under it. Lastly, the Defendant argues that the Plaintiff's challenge to the constitutionality of the statute is moot in light of Illinois' passage of the Firearm Concealed Carry Act.

First, the Defendant is a proper defendant in the Plaintiff's challenge to the AUUW statute. In <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007), the Supreme Court touched on the question of which parties are proper to a lawsuit when it reiterated that courts must determine whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Justice Kennedy later cited <u>MedImmune</u> for the proposition that "[t]he proper defendant in a suit for prospective relief is the party prepared to enforce the relevant legal rule against the plaintiff." <u>Camreta v. Greene</u>, ___ U.S. ___, 131 S.Ct. 2020, 2043 (2011) (Kennedy, J., dissenting). Because the Defendant

could enforce the AUUW statute against the Plaintiff, he is a proper party to this lawsuit.  As the Court will address below, the Defendant may not be the *only* proper defendant in this suit, but he is nonetheless *a* proper defendant.

Furthermore, the Plaintiff has standing to bring this challenge. "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury."  Bauer v. Shepard, 620 F.3d 704, 708 (7th Cir. 2010).  The threat of prosecution is sufficient to confer standing, "because a probability of future injury counts as 'injury' for the purpose of standing."  Id.  Here, the Plaintiff claims that she would open-carry a rifle or shotgun if not for her fear of being prosecuted by the Defendant for violating the AUUW statute.  The Defendant is charged with enforcing that law, and the threat of prosecution under the law deprives the Plaintiff of what she believes is a constitutional right to openly carry rifles and shotguns.  Even though the Plaintiff has not actually been prosecuted under the law and the Defendant may not have specifically threatened to

prosecute the Plaintiff under the law, the potential for prosecution is sufficient to demonstrate impending injury. The Plaintiff is not required to "undergo a criminal prosecution" before she can have standing to challenge the AUUW statute. See Doe v. Bolton, 410 U.S. 179, 188 (1973) (holding that physicians who would potentially perform abortions had standing to challenge laws criminalizing abortion even though the physicians had not yet been prosecuted or threatened with prosecution under those laws). Furthermore, a judicial decision that the AUUW statute is unconstitutional would redress the Plaintiff's perceived injury by eliminating the possibility that she could be prosecuted under the statute. Therefore, the Plaintiff has standing to challenge the AUUW statute.

Lastly, the Plaintiff's challenge is not rendered moot by the Firearm Concealed Carry Act (the "Act"). The Act made it possible for individuals to legally carry concealed handguns, but the Act did not address the specific complaint made by the Plaintiff here—that she could be charged with aggravated unlawful use of a weapon for openly carrying a shotgun or rifle. The cases cited by the Defendant that found various plaintiffs' challenges to the AUUW statute moot

are distinguishable, as the plaintiffs in those cases were challenging the fact that Illinois lacked any concealed-carry law at all. See Queen v. Alvarez, 979 F. Supp. 2d 845, 847-49 (N.D. Ill. 2013); Shepard v. Madigan, 958 F. Supp. 2d 996, 999-1001 (S.D. Ill. 2013). Those plaintiffs' claims were moot after the passage of the Act, as Illinois now had a concealed-carry law on the books. But the Plaintiff's claim in this case goes further—she argues that even after the passage of the Act, the AUUW statute is still unconstitutional because it restricts the open carrying of rifles and shotguns. Therefore, the Plaintiff's claim is not moot.

Because the Court concludes that the Defendant is a proper party to this lawsuit, that the Plaintiff has standing to bring her constitutional challenge, and that the Plaintiff's claim is not moot, the Defendant's motion to dismiss the Plaintiff's constitutional challenge is denied. Additionally, as it appears that the Illinois Attorney General has not been notified of this suit, the Court will certify notification of the Plaintiff's challenge to the AUUW statute to the Attorney General under Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), and the Attorney General will be given an

opportunity to intervene in defense of the statute.

**B. The Plaintiff's unreasonable search and seizure claim must be dismissed because probable cause existed to seize all of the Southerlands' firearms and the Defendant is entitled to qualified immunity.**

The Plaintiff argues that by allowing for the seizure of "all weapons and firearms," the warrant was overly broad and not supported by probable cause. She further contends that the Defendant acted unreasonably by authorizing the seizure of all of the Southerlands' firearms under the warrant. The Defendant counters that the Plaintiff's unreasonable search and seizure claim should be dismissed because the search warrant was supported by probable cause and was not overly broad, and because the Defendant should be entitled to qualified immunity against the Plaintiff's claim. The Court concludes that the Defendant had probable cause to seize all of the Southerlands' firearms, and, regardless, the Defendant is entitled to qualified immunity against the Plaintiff's claim because he reasonably believed that he had probable cause.

Probable cause for a search exists when "there is a fair

probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "The test for probable cause is not reducible to 'precise definition or quantification.'" Florida v. Harris, ___ U.S. ___, 133 S. Ct. 1050, 1055 (2013) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). The court must simply evaluate the particular circumstances of a case to determine whether there was "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" Id. (alteration in original) (quoting Gates, 462 U.S. at 238, 231).

Here, probable cause existed to seize all of the Southerlands' firearms due to Jurl Southerland's dangerous and threatening conduct. Mr. Southerland exhibited an intent to use his firearms for illegal purposes by pointing his "long gun" at Deputy Bedwell and stating that he would "shoot the next car that stopped near his house." Complaint for Search Warrant, d/e 1-2 at 3. Based on this dangerous behavior, the circuit judge approved a warrant authorizing the seizure of "[a]ny and all weapons and firearms . . . which may have been used in commission of the offense or

Aggravated Assault, Aggravated Unlawful Use of a Weapon, and Reckless Conduct." Search Warrant, d/e 1-1. The warrant's authorization to seize weapons that Mr. Southerland "may have . . . used" to commit the offenses complies with the Illinois warrant statute, which authorizes the seizure of "[a]ny instruments, articles or things . . . intended for use or which are or have been used in the commission of . . . the offense in connection with which the warrant is issued." 725 ILCS 5/108-3(a)(1). Following the guidance of this statute, the warrant authorized the seizure of all weapons that Mr. Southerland could have used against Deputy Bedwell, had he so chosen, as those would be just as dangerous in Mr. Southerland's hands as the specific "long gun" that he used against Deputy Bedwell. Further, Mr. Southerland's threats also exhibited an intent to use firearms against people who passed by the Southerlands' property, giving the police probable cause to seize all of the Southerlands' firearms. In other words, based on the very real threat that Mr. Southerland would use his firearms to threaten and possibly harm people who passed near the Southerlands' property, probable cause existed to seize all of the firearms to which

Mr. Southerland had access.

Moreover, even if probable cause did not exist for the search and seizure in this case, the Defendant is entitled to qualified immunity against the Plaintiff's claim if a reasonable official could have believed that probable cause existed.  A government official is entitled to qualified immunity against civil liability unless his conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The purpose of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments."  Ashcroft v. al-Kidd, ___ U.S. ___, 131 S.Ct. 2074, 2085 (2011).  The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  To determine whether an official is entitled to qualified immunity, the court evaluates the "objective legal reasonableness" of the official's actions in light of the "clearly established" law at the time the official took those actions.  Anderson v. Creighton, 483 U.S. 635, 639 (1987).

Furthermore, a government official who acts in reliance on a

warrant that has been approved by a neutral magistrate is presumed to have acted in "an objectively reasonable manner," which will generally entitle the official to qualified immunity. Messerschmidt v. Millender, ___ U.S. ___, 132 S. Ct. 1235, 1245 (2012) (citing United States v. Leon, 468 U.S. 897, 922-23 (1984)). This presumption can only be overcome if, based on the facts known to the official, "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley v. Briggs, 475 U.S. 335, 341 (1986).  Such a situation could arise where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).

In applying these rules to circumstances similar to those in the case currently before this Court, the Supreme Court held that officers did not act unreasonably when they relied on a warrant authorizing the search and seizure of all of a person's firearms, even though the officers knew that the person had only used one of those firearms in a crime.  See Messerschmidt, 132 S. Ct. at 1246-47.  In

<u>Messerschmidt</u>, a man named Jerry Ray Bowen fired a sawed-off shotgun at his ex-girlfriend after a domestic dispute. <u>Id.</u> at 1241. The woman informed the police that Bowen was a member of a gang and directed them to the house where Bowen was currently staying, which belonged to Bowen's foster mother. <u>Id.</u> Police Detective Curt Messerschmidt looked into Bowen's background and determined that Bowen had committed numerous felonies and firearm-related offenses in the past. <u>Id.</u> at 1242. Detective Messerschmidt then prepared an affidavit for Bowen's arrest, as well as an affidavit for a warrant authorizing seizure of all firearms and gang-related materials found in Bowen's foster mother's home. <u>Id.</u> A deputy district attorney reviewed the warrant application, and a magistrate approved it. <u>Id.</u> at 1243. When the warrant was served, Bowen was not at the home, but the police seized a shotgun that belonged to Bowen's foster mother, Augusta Millender, as well as a box of .45-caliber ammunition. <u>Id.</u>

After this incident, Millender filed suit against Detective Messerschmidt alleging that the warrant was invalid under the Fourth Amendment. <u>Id.</u> A U.S. district court, and then the en banc

Ninth Circuit on appeal, ruled that the warrant's authorization of the seizure of all firearms and firearm-related materials was not supported by probable cause.  Id. at 1243-44. The Ninth Circuit further found that a reasonable officer would have known about the warrant's defects, meaning that the defendant officers were not entitled to qualified immunity.  Millender v. Cnty. of Los Angeles, 620 F.3d 1016, 1033-35 (9th Cir. 2010), rev'd sub nom. Messerschmidt v. Millender, ___ U.S. ___, 132 S. Ct. 1235 (2012).

On appeal, the Supreme Court did not address the validity of the warrant, but the Court reversed the lower courts' denial of qualified immunity.  Messerschmidt, 132 S. Ct. at 1244-46.  The Court first concluded that "given Bowen's possession of one illegal gun, his gang membership, his willingness to use the gun to kill someone, and his concern about the police, a reasonable officer could conclude that there would be additional illegal guns among others that Bowen owned."  Id. at 1246.  The Court further reasoned that "[a] reasonable officer also could believe that seizure of the firearms was necessary to prevent further assaults on [Bowen's ex-girlfriend]."  Id.  Because California law allowed for

search warrants to issue for items "in the possession of any person with the intent to use them as a means of committing a public offense," Cal. Penal Code § 1524(a)(3), and Bowen had already attempted to use a firearm to shoot his ex-girlfriend, the Court found that "[a] reasonable officer could conclude that Bowen would make another attempt on Kelly's life and that he possessed other firearms 'with the intent to use them' to that end." Messerschmidt, 132 S. Ct. at 1246. The Court ultimately concluded that "[g]iven the foregoing, it would not have been 'entirely unreasonable' for an officer to believe, in the particular circumstances of this case, that there was probable cause to search for all firearms and firearm-related materials." Id. at 1246-47.

Like the officers in Messerschmidt, the Defendant was not entirely unreasonable in believing that probable cause existed to seize all of the Southerlands' firearms. While Jurl Southerland did not have prior felonies, and there was no evidence that the "long gun" Mr. Southerland used was illegal, Mr. Southerland had used the gun for an illegal purpose by pointing it at Deputy Bedwell. As discussed above, Mr. Southerland had threatened police officers

and stated that he would "shoot the next car that stopped near his house." Complaint for Search Warrant, d/e 1-2 at 3. In those ways, Mr. Southerland's behavior exhibited an intent to use his firearms for illegal purposes.

Under these circumstances, even if the warrant were not supported by probable cause, the Defendant could reasonably have concluded that the warrant validly authorized the seizure of all of the Southerlands' firearms to prevent Mr. Southerland from using them for an illegal purpose. The Defendant was, therefore, not "entirely unreasonable" in believing he could seize all of the Southerlands' firearms, just as the officers in <u>Messerschmidt</u> were not unreasonable in believing they could seize all of Bowen's firearms in that case. <u>See</u> <u>Messerschmidt</u>, 132 S. Ct. at 1246. For that reason, the Defendant is entitled to qualified immunity against the Plaintiff's unreasonable search and seizure claim.

## IV.  <u>CONCLUSION</u>

The Court finds that the Plaintiff's claim challenging the constitutionality of the AUUW statute survives the Defendant's motion to dismiss, and that the Defendant is entitled to qualified

immunity against the Plaintiff's unreasonable search and seizure claim. Therefore, the Defendant's motion to dismiss (d/e 9) is DENIED as to the Plaintiff's challenge to the AUUW statute and GRANTED as to her unreasonable search and seizure claim. The Court will certify notice of the Plaintiff's constitutional challenge to the Illinois Attorney General. The Attorney General will have 60 days from the date of that order to intervene in this suit.

ENTER: March 20, 2015.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE