**E-FILED**
Thursday, 31 March, 2016  08:38:05 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DONELLA SOUTHERLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil No. 14-3094** |
| **RAMON ESCAPA, In His** | ) | |
| **Individual Capacity and Official** | ) | |
| **Capacity as Schuyler County** | ) | |
| **State's Attorney,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Ramon Escapa's Motion to Dismiss for Failure to State a Claim (d/e 9).  Plaintiff Donella Southerland is proceeding pro se.  Defendant's motion is GRANTED because 720 ILCS 5/24-1.6 is constitutional under the two-step method for analyzing Second Amendment cases set forth by the Seventh Circuit in Ezell v. City of Chicago, as applied in Friedman v. City of Highland Park, Illinois.

## I.  BACKGROUND

On April 2, 2014, Plaintiff Donella Southerland ("Plaintiff")
filed a Complaint in this Court, challenging the constitutionality of
Illinois' Aggravated Unlawful Use of Weapons statute, ("AUUW") and
alleging that weapons of hers were illegally seized.  See Compl. (d/e
1); see also  720 ILCS 5/24-1.6 (for statute).  The Court dismissed
the seizure claim because the seizure of Plaintiff's weapons "was
supported by probable cause, and, regardless, the Defendant is
entitled to qualified immunity."  See Opinion (d/e 14).  Defendant
additionally argued that Plaintiff's Second Amendment claim should
be dismissed because: (1) Defendant is not the proper defendant, (2)
Plaintiff lacks standing, and (3) Plaintiff's claim is moot in light of
the Firearm Concealed Carry Act.  This Court ruled that Plaintiff's
Second Amendment claim was ripe and proper, and, therefore,
could continue.  See id.  Additionally, this Court issued a Certified
Order permitting the Attorney General an opportunity to intervene
on the question of whether the AUUW statute violates the United
States Constitution.  See Order (d/e 15).  On May 22, 2015, the
Illinois Attorney General filed a second Motion to Dismiss for

Failure to State a Claim, on behalf of Defendant Roman Escapa, (d/e 19), arguing that the AUUW statute does not violate the Constitution.

The AUUW statute generally criminalizes the public carry of all firearms.  See 720 ILCS 5/24-1.6.  However, after the Illinois Firearm Concealed Carry Act ("Concealed Carry Act") was passed in 2013, the AUUW statute was amended to allow a person to carry a concealed "pistol, revolver, or handgun" if the person possesses a valid license under the Concealed Carry Act.  See id.   The Concealed Carry Act does not provide for the public carrying of rifles or shotguns, concealed or otherwise.  See id. at (a)(3)(A). Plaintiff claims that she needs to be able to openly carry a loaded rifle or shotgun to defend herself and her property.  Compl. (d/e 1) ¶¶ 12-16.  She argues that by prohibiting her from doing so, the AUUW statute violates her Second Amendment rights.  Id. ¶¶ 41-44.

Plaintiff's claim is now dismissed because this Court finds that the AUUW statute is Constitutional.

## II.  **LEGAL STANDARD**

Dismissal under Rule 12(b)(6) is proper if a complaint does not
"contain sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
570 (2007)).  In determining whether a complaint can survive a
motion to dismiss, the Court can consider "the allegations that are
contained in [the complaint] and all reasonable inferences drawn
from [the complaint] in favor of the nonmovant." <u>Dausch v. Rykse</u>,
52 F.3d 1425, 1428 (7th Cir. 1994).

## III.  **ANALYSIS**

Defendant argues that Plaintiff's claim that the AUUW statute
violates her Second Amendment rights should be dismissed
because the statute is constitutional.  Plaintiff claims that, even
though the AUUW statute permits the *concealed* carry of pistols,
revolvers, or handguns, the statute is unconstitutional because it
criminalizes the *open* carry of any firearm.  <u>See</u> Pl. Resp. to Def.
Mot. to Dismiss (d/e 25) at ¶6.  Plaintiff suggests that this
limitation on the open carry of firearms illegally infringes on her

right to defend herself outside of her home.  Plaintiff argues that

Illinois cannot deprive her of the right to choose her weapon of self-

defense, as long as her weapon of choice is the kind "typically

possessed by law-abiding citizens for lawful purposes."  Mem. in

Supp. of Pl. Resp. to Def. Mot. to Dismiss (d/e 26) at 5 (quoting

Dist. of Columbia v. Heller, 554 U.S. 570, 621-22 (2008)).  Plaintiff

further argues (although Plaintiff did not raise this issue in her

Complaint) that the concealed carry of a handgun is not a sufficient

means of self-defense.  See Pl. Resp. to Def. Mot. to Dismiss (d/e

26) at ¶6 (Having to conceal the handgun "makes it infeasible to

carry a handgun for self-defense.").  The Court finds that the AUUW

statute is constitutional; therefore, Plaintiff's claim is dismissed.

The Seventh Circuit has found that the motion to dismiss

stage is proper for deciding the constitutionality of the AUUW

statute because the analysis "does not present factual questions for

determination at trial."  Moore v. Madigan, 702 F.3d 933, 942 (7th

Cir. 2012) (reversing motions to dismiss two challenges to the

constitutionality of the AUUW statute prior to Illinois' enactment of

the Concealed Carry Act and remanding the cases for "entry of

declarations of unconstitutionality and permanent injunctions.").
Accordingly, there are no "evidentiary issues" to be developed in
discovery prior to the Court's ultimate determination.  Id.  The
Court does not consider "facts concerning the conduct of parties in
a particular case," but rather considers only facts that "bear on the
justification of legislation."  Id.

The Seventh Circuit has provided a two-step analysis in
evaluating the constitutionality of statutes under the Second
Amendment.  See Ezell v. City of Chicago, 651 F.3d 684, 701-04
(7th Cir. 2011) (outlining two-step method used by Seventh Circuit
and "followed by Third, Fourth, and Tenth Circuits in other Second
Amendment cases") (citations omitted).  The first step of the
analysis is a question of "scope."  Id. at 701.  The court must ask if
the conduct that is criminalized by the statute falls within the
protections provided by the Second Amendment.  Id. at 701 ("the
threshold inquiry" is whether the "restricted activity is protected by
the Second Amendment").  To answer this question, courts must
engage in a "textual and historical inquiry into the original
meaning" of the Second Amendment.  See id. at 701  If the conduct

is not protected by the Second Amendment, then the inquiry is over, and the law is constitutional.  See id. at 702-03.  ("[I]f the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historic moment…then the analysis can stop there.").  However, if a court finds that the conduct is protected by the Second Amendment, then the inquiry is proceeds to the second step.  See id.  The government still has discretion to regulate activity falling within the scope of the Second Amendment to a degree.  Id. at 703 ("McDonald emphasized that the Second Amendment limits but by no means eliminates governmental discretion to regulate activity falling within the scope of the right.") (internal quotations omitted).

The second step of the analysis is a balance of considerations. The court must consider the particular "regulatory means" that the government has chosen, i.e., to what degree does the regulation infringe on the Second Amendment.  Id.  Then, depending on the severity of the infringement, the court determines how strong a "public-interest justification" is required to pass constitutional

muster.  See id. at 708.  Even if the government has a substantial interest in prohibiting the conduct for the benefit of the public, the Court must still look at the means of regulation: "how close the law comes to the core" of what is protected by the Second Amendment and the "severity" of the burden created.  Id.  Because of the complex analysis involved, there is no one-size fits all level of scrutiny to apply in Second Amendment cases.  "[A] severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification."  Id. at 708.  Additionally, when the burden is "severe," the government must show a "close fit" between the restricted conduct and the public interest.  Id. at 708-09.  However, a more "modest burden on the right," including laws that "regulate rather than restrict" do not require as strong a justification.  Id.

This Court finds that the acts criminalized by the AUUW statute, the ability to openly carry any firearm, as well as the ability to carry a concealed firearm aside from pistols, revolvers, and handguns, is clearly within the scope of the Second Amendment. The Plaintiff, who is already permitted by law to use her desired

means of self-defense, *i.e.* a rifle or shotgun (together "long guns"),
*inside* her home, seeks to use this same means of self-defense
*outside* the home as well.  In Moore, the Seventh Circuit conducted
an analysis of Supreme Court jurisprudence, the history of the
Second Amendment, and the plain meaning of the Second
Amendment's language, finding that "[a] right to bear arms…implies
a right to carry a loaded gun outside her home."  702 F.3d at 936
('The right to 'bear' as distinct from the right to 'keep' arms is
unlikely to refer to the home.").  Further, as the Plaintiff argues in
her response, the Supreme Court in Heller implied that the Second
Amendment protects the right to keep and bear arms that are
"typically possessed by law-abiding citizens for lawful purposes."
Mem. in Supp. of Plaintiff's Resp. to Def. Mot. to Dismiss (d/e 26) at
5 (quoting Heller, 554 U.S. at 621-22 (2008) (stating such as the
reason that firearms typically used for criminal purposes, such as
short-barreled shotguns, are not protected)).  Plaintiff seeks to
employ long guns for self-defense.  Long guns are typically
possessed and used for lawful purposes, such as hunting.  Further,
long guns are weapons that would have been "in common use" at

the time the Second Amendment was enacted.  See Heller, 554 U.S. at 627 (recognizing that an "important limitation" on Second Amendment right is that the weapons protected were those "in common use at the time").  Therefore, the Court finds that the open carry of long guns for self-defense fits within the scope of Second Amendment protection.

As noted above, however, this determination does not end the analysis.  Citizens do not have a right to "carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626 (citing, as historical examples, State v. Chandler, 5 La.Ann. 489, 489-90 (La. 1850) (holding that a prohibition on the carrying of concealed weapons was lawful under the Second Amendment); Nunn v. State, 1 Ga. 243, 251 (Ga. 1846) (same)). Further, as the Seventh Circuit cautioned in Friedman v. City of Highland Park, IL, if the issue of whether certain conduct is constitutionally protected is left open by the U.S. Supreme Court, the conduct must be analyzed rather than assumed to be protected. 784 F.3d 406, 410 (7th Cir. 2015) ("Cautionary language about what has been left open should not be read as if it were part of the

Constitution or answered all possible questions.").  Therefore, this Court must turn to step two of the analysis and determine whether the AUUW statute falls within the government's discretion to regulate activity protected by the Second Amendment.  As stated above, the Court must look at the public benefit in prohibiting the conduct compared to how burdensome the particular means of regulation is on citizens.

The Illinois Attorney General argues that the AUUW statute is substantially related to the compelling government interest in "protecting its citizens from being terrorized by the fear of a shooting in public."  Def. Mem. of Law in Supp. of Def. Mot. to Dismiss (d/e 20) at 25.  The Attorney General further argues that Illinois has a "related compelling interest" in preventing *actual* public shootings.  Plaintiff does not specifically argue that the government's interest in either "protecting its citizens from being terrorized by the fear of a shooting in public" and preventing *actual* public shootings is not "substantial" or "compelling," rather she dismisses those benefits as already "argued" and "denied" in previous cases.  Mem. in Supp. of Pl. Resp. to Def. Mot. to Dismiss

(d/e 26) at 7 (citing <u>Moore</u>, <u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 742 (2010), and <u>Heller</u>.)  However, the three cases cited by Plaintiff do not fully support her contention that the benefits proffered by the Attorney General have previously been "argued" and "denied."  In <u>Moore</u>, the Seventh Circuit rejected the premise that allowing public carry of firearms to some degree would increase gun violence, provided citizens had to obtain a permit to carry a concealed firearm.  702 F.3d at 938 ("Based on available empirical data…we expect relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home, assuming that some sort of permit system for public carry is allowed to stand").

However, in <u>Moore</u>, the Seventh Circuit was analyzing the previous version of the AUUW statute, which constituted a complete prohibition on carrying firearms outside the home.  Further, in <u>McDonald</u> and <u>Heller</u>, the U.S. Supreme Court did not conduct an interest-balancing at all.  In those cases, the U.S. Supreme Court overturned complete bans on handguns in the home because the core of the Second Amendment protection is a citizen's right to self-

defense and, therefore, no interest was substantial enough to justify a full prohibition on handguns, the "quintessential self-defense weapon." Heller, 554 U.S. at 626, 634 ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding interest balancing approach."); *see also* McDonald, 561 U.S. at 791 (citing Heller's rejection of allowing for an interest-balancing test when faced with a similar ban on handguns in the home).

Further, whether the benefits identified by the Attorney General were found insufficient to support a regulation in previous cases is not dispositive in the present case. The Court's analysis is a balancing of interests, where the Court must weigh the public-benefit created by the government's criminalization of the conduct against the burden on citizens' Second Amendment right created by criminalization of the conduct. As the Seventh Circuit noted in Ezell, a "severe burden" requires an "extremely strong public-interest justification," whereas a "modest burden" is "more easily justified." 651 F.3d at 708. Therefore, purported benefits that may have been insufficient to uphold statutes challenged in previous

cases, like the "severe burden" of a complete prohibition of carrying firearms outside the home overturned in Moore, may be sufficient when balanced with a different regulation.  See 702 F.3d at 940 (stating that while a "blanket prohibition" on public carry requires a greater showing of justification than that the "public *might* benefit," a law imposing a "lesser burden" would not require the state "prove so strong a need") (emphasis in original).   This Court finds that "protecting [ ] citizens from being terrorized by the fear of a shooting in public" and preventing *actual* public shootings, the benefits argued by the Attorney General, are substantial benefits.

The Seventh Circuit has recognized that there is a government interest in preventing public gun violence.  In Moore, the Seventh Circuit did not find the benefit of preventing public gun violence substantial enough to outweigh the burden of a full ban on the public carry of firearms; however, the Moore court found that, despite the need for self-defense, the government interest still supported the regulation of public carry to some extent.  Id. at 938 (finding that courts can invalidate laws prohibiting public carry, "assuming that some sort of permit system" is "allowed to stand").

Therefore, <u>Moore</u> suggests that the public benefit of preventing

public gun violence could support a regulation such as the present

AUUW statute, which permits concealed carry of pistols, revolvers,

and handguns.

Further, the Attorney General's other purported benefit,

protecting citizens from the "terrorizing" fear of public shootings has

gained even more significant traction in the Seventh Circuit.  In

<u>Friedman</u>, the court found a reduction of the "perceived risk" of

mass shooting to be a "substantial benefit," to the extent that the

court upheld Highland Park's statute prohibiting assault weapons.

784 F.3d at 412 ("If a ban on semiautomatic guns and large-

capacity magazines...makes the public feel safer as a result, that's a

substantial benefit.").  Scholars have found that allowing the carry

of firearms in plain sight is likely to inspire public fear. *See*, *e.g.*,

Volokh, 56 UCLA L. Rev. 1443, 1521 ("In many places, carrying

openly is likely to frighten many people"); James Bishop, <u>Hidden or</u>

<u>on the Hip: The Right(s) to Carry After Heller</u>, 97 Cornell L. Rev.

907, 928 (2012) (concealed carrying "less disruptive to the public

peace" than open carry); Reid Golden, <u>Loaded Questions: A</u>

<u>Suggested Constitutional Framework for the Right to Keep and Bear Arms</u>, 96 Minn. L. Rev. 2182, 2210 (2012) (requiring an open carry scheme "may cause alarm in public").  Therefore, the Court finds that, as in <u>Friedman</u>, alleviating the public of its fear of gun violence is a substantial benefit.

The competing interest in this analysis is how significantly the particular regulation burdens a citizens' Second Amendment right. In the present case, the regulation limits the extent to which a citizen can carry firearms in public for self-defense.  The previous version of the AUUW statute was overturned by both the Seventh Circuit Court of Appeals and the Illinois Supreme Court; however, the focus of both courts' analysis was whether a *complete* ban on the public carry of firearms could be justified.  <u>See</u> <u>Moore</u>, 702 F.3d at 940 ("A blanket prohibition on carrying guns in public prevents a person from defending himself anywhere except inside his home; and so substantial a curtailment of the right requires a greater showing of justification than merely that the public *might* benefit on balance from such curtailment."); <u>see also</u> <u>People v. Aguilar</u>, 2 N.E.3d 321, 327 (Ill. 2013) (overturning the ban citing the Seventh

Circuit's analysis in *Moore*).  Because the current version of the

AUUW statute does not constitute a *complete* prohibition on the

public carry of firearm, this case more closely parallels the issue

before the Seventh Circuit in Friedman.  In Friedman, the Seventh

Circuit upheld a statute that limited the types of weapons a citizen

could use to defend his or her home, specifically a Highland Park

city ordinance prohibiting semi-automatic assault weapons and

large capacity magazines.  See, 784 F.3d 406.  The court

emphasized that the important question when analyzing the extent

of the burden that a regulation places on citizens is "whether law-

abiding citizens retain adequate means of self-defense."  Id. at 410-

11 ("Since the banned weapons can be used for self-defense, we

must consider whether the ordinance leaves residents of Highland

Park ample means to exercise the inherent right of self-defense that

the Second Amendment protects.") (internal quotations omitted).

The current version of the AUUW statute, as amended after

Illinois passed the Concealed Carry Act, creates an avenue for

citizens to pursue means of self-defense outside the home.  The

Concealed Carry Act provides that the government "shall issue a

license to carry a concealed firearm" to any person who: (1) is at least 21; (2) has a valid FOID card and still meets the FOID requirements when applying for a concealed carry permit; (3) has not been convicted of a violent misdemeanor or more than two DUI or controlled substance crimes in the last five years; (4) is not the subject of a pending warrant or proceeding that could lead to disqualification under the FOID Act or subsection (3); (5) has not been in residential or court-ordered drug or alcohol treatment in the last five years; and (6) has completed the requisite firearms training. 430 ILCS 66/25. Plaintiff does not argue that this permit process is overly burdensome or that *handguns*, generally, are an insufficient means of self-defense. Instead, Plaintiff argues that Illinois cannot dictate the specific firearm she uses for self-defense, and that *concealed carry* of a handgun is an insufficient means of self-defense.

However, the government must only provide for "adequate" means of self-defense. <u>Friedman</u>, 784 F.3d at 411. Therefore, the government does not have to allow each individual citizen to use his or her preferred firearm, in Plaintiff's case a long gun, as long as

every individual can adequately defend him or herself.  In <u>Heller</u>,

the U.S. Supreme Court did hold that it was unconstitutional to

ban handguns in the home even though long guns were allowed.

554 U.S. at 628-29.  However, the U.S. Supreme Court based this

holding on a finding that a prohibition on handguns, "the most

preferred firearm in the nation to keep and use for protection of

one's home and family," did not allow citizens to retain an adequate

means of self-defense.  <u>See</u> <u>id.</u> ("[T]he American people have

considered the handgun to be the quintessential self-defense

weapon.").  The Court supported its finding with a number of

objective reasons for why a handgun is the most effective firearm for

self-defense and thus needed to be legalized for that purpose.  <u>See</u>

<u>id.</u> (finding that a handgun "is easier to store in a location that is

readily accessible in an emergency; it cannot easily be redirected or

wrestled away by an attacker; it is easier to use for those without

the upper-body strength to lift and aim a long gun; and it can be

pointed at a burglar with one hand while the other hand dials the

police").  Plaintiff, however, does not set forth any reasons why a

long gun is a more adequate means of self-defense than a hand

gun.  In fact, Plaintiff does not argue, at all, that a handgun is an

inadequate means of self-defense.  Rather, Plaintiff simply argues

that she prefers long guns.

Plaintiff next argues that *concealed carry* of a handgun, the

means permitted in Illinois, is an inadequate means for self-

defense.  Plaintiff suggests that the delay in having to retrieve a

concealed weapon makes the use of a concealed weapon for self-

defense impracticable.   Plaintiff's Resp. to Def. Mot. to Dismiss (d/e

26) at ¶6 ("One can only imagine when the armed criminal shows

up the plaintiff saying, 'Oh, please wait while I…dig my gun out of

my purse.'").  The only support Plaintiff cites for this contention is

<u>Moore</u>'s general discussion about how self-defense is needed

outside the home.  *See id.* (citing <u>Moore</u>, 702 F.3d at 937).

However, <u>Moore</u> does not support Plaintiff's argument that

concealed carry of handguns is an inadequate means of self-defense

because, in <u>Moore</u>, the Seventh Circuit specifically suggests legal

concealed carry as a workable alternative to a complete prohibition

on the public carry of firearms.  <u>See</u>, <u>e.g.</u>, 702 F.3d at 939

(rebutting the government's argument that public carry of firearms

is a safety risk, by citing a study stating that "data and modeling problems prevented a strong claim that "laws [allowing concealed handguns to be carried in public] increase crime"); id. at 941 (citing a New York State law that allows citizens to apply for "a permit to carry a concealed handgun in public").  Further, the Concealed Carry Act requires only that the handgun be "partially concealed." 430 ILCS 66/10(c)(1) ("A license shall permit the licensee to (1) carry a loaded or unloaded concealed firearm, fully concealed or partially concealed, on or about his or her person…."). Although, at this point, neither the legislature nor the courts in Illinois have addressed the meaning of "fully concealed or partially concealed," the law's inclusion of "on… her person" indicates that Plaintiff is not required to carry her handgun in her purse, as she suggests.

Further, the definitions of "concealed" in other states that permit concealed carry also suggest that Plaintiff has additional options beyond carrying a handgun in her purse.  See Miss. Code § 97-37-1 (West 2013) ("hidden or obscured from common observation."); Fla. Stat. § 790.001(2) (2013) ("concealed from the ordinary sight of another person"); TEX. GOV'T CODE ANN. §

411.171(3) ("the presence of which is not openly discernible to the

ordinary observation of a reasonable person").  Accordingly, under

the AUUW statute, Plaintiff has the ability to carry a handgun, "the

quintessential self-defense weapon," in an accessible fashion

"on...her person."  Therefore, the Court finds that the AUUW

statute, which allows the concealed or partially concealed carry of

handguns, does not impose a "severe" burden on a citizen's right to

self-defense and, therefore, does not require an "extremely strong

public-interest justification." Ezell, 651 F.3d at 708 A].  The Court

finds that intermediate scrutiny is appropriate.

Under, intermediate scrutiny, the law must be "substantially

related to an important government objective." Clark v. Jeter, 486

U.S. 456, 461 (1988); see also Friedman, 784 F. 3d at 410 (Manion,

J., dissenting) ("[I]ntermediate scrutiny does not require that the

ordinance be the least restrictive means, but that it serve an

important government interest in a way that is substantially related

to that interest").  Again, this case presents a similar situation to

Friedman, where the Seventh Circuit found that the "substantial

benefit" of easing public fear of gun violence justified a regulation

that allowed citizens to "retain an adequate means of self-defense." 784 F.3d at 410-12.  Accordingly, this Court finds that the AUUW statute, now amended to allow the concealed carry of pistols, revolvers, and handguns with a permit, provides for "an adequate means of self-defense," and is justified by the "substantial benefit" of protecting Illinois citizens from being "terrorized by the fear of a shooting in public" and the related benefit of preventing actual public shootings.  Therefore, the statute is within the government's discretion to regulate conduct that is protected by the Second Amendment.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the AUUW statute is constitutional.  Consequently, Plaintiff does not state a claim upon which relief could be granted.  Therefore, the Defendant's motion to dismiss (d/e 19) is GRANTED.  The Plaintiff's claim is DIMISSED WITH PREJUDICE.  This case is CLOSED.

ENTER: March 30, 2016.

<u>s/ Sue E. Myerscough</u>

SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE